FILED 10 JUN 18 10:24USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRY PARKER,                                              Civil No. 09-183-CL

    Plaintiff,                                              REPORT AND RECOMMENDATION

    v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendant.

CLARKE, Magistrate Judge.

    Plaintiff Terry Parker brings this action pursuant to section 205(g) of the Social Security Act, as amended (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for supplemental security income benefits. For the reasons explained, the decision of the Commissioner should be affirmed.

## BACKGROUND

    Plaintiff applied for SSI benefits alleging disability commencing May 2000. His applications were denied. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on April 29, 2008. Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. On June 20, 2008, the ALJ rendered an adverse decision. The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of the ALJ's decision, plaintiff was forty-one years old. Plaintiff completed the eleventh grade. Plaintiff has past relevant work experience as a saw operator, painter, and lumber handler. Plaintiff alleges disability based upon a combination of: right shoulder pain with pain in the neck, arm, and fingers; left shoulder, arm, and hand pain, pain in the hips and pain and numbness in the legs; chronic fatigue; status post left ankle injury; staph infection of left knee; and chest pains. The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933

F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 14, 2006. (Tr. 14.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff has the following severe combination of impairments: probable right shoulder rotator cuff tear and probable myofascial lower back pain. (Tr. 14.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the listed impairments. (Tr. 14.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In

4 - REPORT AND RECOMMENDATION

this case, the ALJ found that plaintiff retains an RFC to perform light level exertional work, with lifting and/or carrying up to 10 pounds frequently and up to 20 pounds occasionally; sitting, standing, and walking each for at least six hours out of eight hours with the opportunity to change positions occasionally; climb ladders or scaffolds occasionally and reaching overhead occasionally. (Tr. 14-16.) The ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 16.) Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ found that, considering plaintiff's age, education, work experience, and residual functional capacity, there were other jobs which exist in significant numbers in the national economy which he can perform. (Tr. 17.) Therefore, the ALJ found that plaintiff was not under a disability. (Tr. 12, 17, 18.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and contains errors of law. Plaintiff contends that the ALJ erred by (1) failing to develop the record; and (2) improperly rejecting his testimony.

**Development of the record**

Plaintiff contends that the ALJ failed to fully develop the record by relying on the opinion of Dr. Horner who plaintiff asserts did not perform a complete evaluation.

Prior to making a decision, the ALJ is required to develop a claimant's medical history for at least the twelve months preceding the claim. 20 C.F.R. § 404.1512(d), 416.912(d). In the

5 - REPORT AND RECOMMENDATION

Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the record and to assure that the claimant's interests are considered."'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The duty to further develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (requirement for additional information "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

On August 12, 2006, Peder Horner, M.D., conducted a consultative examination in which he performed a physical examination including range of motion and motor strength of plaintiff's back, neck, shoulder joints, and ankle joints. Dr. Horner's diagnoses were right shoulder pain/weakness most likely secondary to chronic rotator cuff injury with or without secondary degenerative joint disease. In this regard, Dr. Horner stated: "I have no imaging reports for my review. Therefore, the severity cannot be determined other than clinical decreased range of motion, pain, and strength as indicated in the report." (Tr. 153.) Dr. Horner also diagnosed low back pain, not suffering from radiculopathy, which was most likely myofascial in origin or slight degenerative disk disease. He found that plaintiff was restricted to lift/ carry frequently 20 pounds and occasionally 10 pounds secondary to right shoulder decreased range of motion and weakness; and manipulative limitations to include "only those that would frequently require overhead work, given the probable right rotator cuff tear." (Tr. 150-53.)

6 - REPORT AND RECOMMENDATION

The record includes an Oregon Imaging Centers diagnostic report of a three-view right shoulder x-ray taken on August 17, 2006. The impression of Cathryn L. Chicola, M.D., radiology associate, who interpreted the x-ray was "Negative." No fracture or dislocation was seen, the joints are maintained, and the remaining bones are unremarkable. (Tr. 154.)

Non-examining physicians Sharon B. Eder, M.D., and Mary Ann Westfall, M.D., reviewed the medical record. Each considered Dr. Horner's report and the x-ray report, Dr. Eder noting the right shoulder x-rays were "unremarkable" (Tr. 162) and Dr. Westfall noting the x-ray was "negative" (Tr. 163). Each agreed with the lift/carry and manipulative restrictions found by Dr. Horner, and included additional limitations as to standing, walking, sitting, and climbing. (Tr. 155-63.)

The record here is neither ambiguous nor inadequate to allow the ALJ to evaluate the evidence properly as to plaintiff's impairments. Dr. Horner evaluated the severity of plaintiff's right shoulder pain/weakness based on his clinical findings. The imaging that was done of the shoulder was interpreted by a physician, Dr. Chicola, as negative, and her report was reviewed and considered by Dr. Eder and Dr. Westfall. The ALJ did not err in not further developing the record as argued by plaintiff.

Plaintiff also contends that the physicians' findings that his range of motion was normal except for the right shoulder area were "wrong," relying on certain blank forms from the Workers' Compensation Division of the Department of Consumer & Business Services attached to his brief. This court may not consider evidence which was not before the Appeals Council or the ALJ. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000). And, to be entitled to a

7 - REPORT AND RECOMMENDATION

remand for consideration of new evidence, a plaintiff must show the evidence is material and presents a reasonable possibility of changing the outcome of the ALJ's determination, and that there is good cause for the failure to include the evidence in the prior proceeding. Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). Plaintiff has not satisfied these requirements.

On this record, the court finds that the ALJ did not err in not developing the record.

**Plaintiff's Testimony**

Plaintiff contends that the ALJ improperly rejected his testimony without articulating any reason for doing so. He also asserts that the ALJ did not properly evaluate his testimony and there was no justification for the ALJ to reject his testimony.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear

8 - REPORT AND RECOMMENDATION

and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce some degree of the symptoms alleged by him. There is no evidence of malingering in the record.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The ALJ articulated reasons in his decision for not crediting plaintiff's testimony.

The ALJ first noted that plaintiff acknowledged a capacity to lift up to twenty pounds and walk up to two miles. (Tr. 15.) Light work involves lifting no more than 20 pounds at a time

9 - REPORT AND RECOMMENDATION

and may require a good deal of walking or standing, or sitting most of the time. 20 C.F.R. §§ 404.1567(b); 416.967(b). In July 2006, plaintiff completed an SSA function report stating he can lift about 20 pounds and walk about two miles before needing to rest (Tr. 113), which was corroborated by his mother (Tr. 105). This reason is a clear and convincing reason to discredit plaintiff's testimony of disabling impairments.

The ALJ found that, at odds with alleged declining musculoskeletal conditions, plaintiff has rarely sought medical care. (Tr. 15-16.) The record reveals that plaintiff underwent an examination for an insurance company in August 2000 for his right shoulder injury. (Tr. 87; see Tr. 150). At that time, he declined surgery on his shoulder. (Tr. 150.) The only medical records of treatment for plaintiff's shoulder or back was in January 2007 when plaintiff went to the hospital emergency department complaining of eye redness and shoulder pain in both shoulders. (Tr. 193-94.) Disability reports by plaintiff indicate that he went to Riverstone Clinic for his back in January 2007, March 2007, and December 2007 (Tr. 135, 145, 147-48; see Tr. 117). The ALJ is permitted to consider a claimant's lack of treatment in determining credibility. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ also reasoned that, consistent with plaintiff's seeking little medical care for his shoulders and spine, his pain has required no medications or has responded to over the counter anti-inflammatory medications. (Tr. 15.) In July 2006, plaintiff reported that he took Tylenol or Ibuprofen for pain (Tr. 117), yet in August and October 2006, he reported he was not taking any medication (Tr. 125, 150). In January 2007 when plaintiff went to the emergency department for shoulder pain, he reported he was using over-the-counter Tylenol and was avoiding anti-inflammatories and, following examination, the physician encouraged use of anti-inflammatories

10 - REPORT AND RECOMMENDATION

and suggested ibuprofen, but did not feel that prescription analgesics were indicated at that time (Tr. 193-94). Plaintiff reported on disability reports that he was prescribed medication for back pain in December 2007 (Tr. 145, 148), but December 2007 and January 2008 emergency room reports indicate he was not taking any medication for his shoulders or back (Tr. 165, 167). The Ninth Circuit has determined that evidence of conservative treatment is sufficient to discount a claimant's testimony of the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008).

Additionally, the ALJ found he could not accept the extent of plaintiff's assertion of pain and other limitations because the objective medical evidence showed no sensory, motor, reflex, or coordination loss aside from right shoulder abduction and flexion motion as well as flexion strength, relying on Dr. Horner's report. (Tr. 16.)   In August 2006, Dr. Horner found on examination of plaintiff's range of motion, as to plaintiff's back: extension 30 degrees, flexion 90 degrees, lateral flexion 30 degrees; as to his neck: extension 45 degree, flexion 45 degrees, lateral bending 45 degrees, rotation 80 degrees; as to his shoulder joints: left: abduction 180 degrees, adduction 50 degrees, extension 50 degrees, and flexion 180 degrees and as to his right: decreased active and passive range of motion limited to 90 degrees on flexion and abduction and otherwise normal; and as to his ankle joints: inversion 30 degrees, eversion 20 degrees, plantar flexion 40 degrees, and dorsal 20 degrees bilaterally. As to plaintiff's motor strength/muscle bulk and tone, Dr. Horner found right shoulder abduction and flexion 3/5, and motor strength and bilateral grip strength each 5/5. His general findings were tenderness on left shoulder on range of motion at deltoid region; no muscle spasms; and no positive trigger points. Plaintiff's gait was normal. Dr. Horner diagnosed right shoulder pain/weakness most likely secondary to chronic

11 - REPORT AND RECOMMENDATION

rotator cuff injury with or without secondary degenerative joint disease; and low back pain, not suffering from radiculopathy, which was most likely myofascial in origin or slight degenerative disk disease. Dr. Horner found plaintiff was restricted to lift/ carry frequently 20 pounds and occasionally 10 pounds secondary to right shoulder decreased range of motion and weakness, and manipulative limitations as to frequent overhead work given the probable right rotator cuff tear. (Tr. 150-53; see Tr. 194.) An ALJ may properly consider the opinion of a claimant's physician concerning the severity and limiting effects of the claimant's symptoms. Thomas, 278 F.3d at 958-59.

The ALJ also found that plaintiff's daily activities were inconsistent with disability. Plaintiff reported that he had no problem with personal care; he took care of his pet cat; he walks daily and walks to visit relatives; he prepares his own meals by microwave; he goes outside every day; he shops weekly for food; he mows the lawn over about two days every two weeks; and he walks as a hobby, walking about two miles before needing to stop and rest. (Tr. 108-15, 118.) Plaintiff told Dr. Horner that his right shoulder pain/weakness has caused him to modify how he puts on his clothes. (Tr. 150.) Plaintiff lives with his mother, who corroborates plaintiff's activities. She adds that plaintiff does housework cleaning in about two hours. (Tr. 100-07.) Although the evidence of plaintiff's daily activities may be interpreted in a way more favorable to him, the ALJ's interpretation is a reasonable one and is supported by substantial evidence. See Burch, 400 F.3d at 680-81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas, 278 F.3d at 959.

12 - REPORT AND RECOMMENDATION

The reasons given by the ALJ for discrediting plaintiff's testimony are clear and convincing reasons which are supported by substantial evidence in the record. The ALJ did not err in this regard.

### RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by July 6, 2010. If objections are filed, any response to the objections are due by July 23, 2010,* see Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 18 day of June, 2010.

MARK D. CLARKE
United States Magistrate Judge

13 - REPORT AND RECOMMENDATION